# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
SUPERIOR COURT

| | |
|---|---|
| Hillsborough Superior Court Northern District<br>300 Chestnut Street<br>Manchester NH 03101 | Telephone: 1-855-212-1234<br>TTY/TDD Relay: (800) 735-2964<br>http://www.courts.state.nh.us |

## SUMMONS IN A CIVIL ACTION



Case Name:     **Mitch DeBonville v Reality Interactive, LLC, et al**
Case Number:   **216-2022-CV-00391**

Date Complaint Filed: July 01, 2022

A Complaint has been filed against James Ligotti; Reality Interactive, LLC in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| August 21, 2022 | Mitch DeBonville shall have this Summons and the attached Complaint served upon James Ligotti; Reality Interactive, LLC by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| September 11, 2022 | Mitch DeBonville shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | James Ligotti; Reality Interactive, LLC must electronically file an Appearance and Answer or other responsive pleading form with this Court. A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to James Ligotti; Reality Interactive, LLC:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:

| | |
|---|---|
| David Walter McGrath, ESQ | Sheehan Phinney Bass & Green PA 1000 Elm Street PO Box 3701 Manchester NH 03105-3701 |
| Jonathan Richard Voegele, ESQ | Sheehan Phinney Bass & Green PA 1000 Elm St 17th Fl PO Box 3701 Manchester NH 03105-3701 |
| Reality Interactive, LLC | 213 Court Street 10th Floor Middletown CT 06457 |
| James Ligotti | 7 Cottage Street Branford CT 06405 |

BY ORDER OF THE COURT

July 07, 2022

(126987)

W. Michael Scanlon
Clerk of Court

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

| | |
|---|---|
| Hillsborough Superior Court Northern District<br>300 Chestnut Street<br>Manchester NH 03101 | Telephone: 1-855-212-1234<br>TTY/TDD Relay: (800) 735-2964<br>http://www.courts.state.nh.us |

## NOTICE TO DEFENDANT

Case Name:      **Mitch DeBonville v Reality Interactive, LLC, et al**
Case Number:    **216-2022-CV-00391**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Hillsborough Superior Court Northern District**. Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer. For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps. If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.
  1. Complete the registration/log in process. Click Register and follow the prompts.
  2. After you register, click Start Now. Select **Hillsborough Superior Court Northern District** as the location.
  3. Select "I am filing into an existing case". Enter **216-2022-CV-00391** and click Next.
  4. When you find the case, click on the link and follow the instructions on the screen. On the "What would you like to file?" screen, select "File a Response to Civil Complaint". Follow the instructions to complete your filing.
  5. Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.state.nh.us.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide. In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

NHJB-2678-Se (07/01/2018)

STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.  SUPERIOR COURT
NORTHERN DISTRICT

MITCH DEBONVILLE

v.

REALITY INTERACTIVE, LLC, and JAMES LIGOTTI.

Docket No. 216-2022-CV-00391

## COMPLAINT

NOW COMES the Plaintiff, Mitch DeBonville, by and through his attorneys Sheehan Phinney Bass and Green, PA, and hereby complains against Defendants Reality Interactive, LLC ("Reality") and James Ligotti, respectfully stating as follows:

1. Mr. DeBonville brings this action against the Defendants to redress their fraud, breaches of contract and the implied covenant of good faith and fair dealing, and willful and baseless withholding of lawfully owed commissions on sales originated by Mr. DeBonville for Reality.

## PARTIES

2. The Plaintiff, Mitch DeBonville, is an individual residing at 11 McAfee Farm Road, Bedford, New Hampshire 03110. Mr. DeBonville is a sales executive with decades of experience.

3. Defendant Reality Interactive, LLC ("Reality") is a limited liability corporation organized under the laws of the State of Connecticut, with a principal place of business at 213 Court Street, 10th Floor, Middletown, Connecticut, 06457.

1

4. Defendant James Ligotti is the chief executive officer of the Defendant Reality. Upon information and belief, Defendant Ligotti resides at 7 Cottage Street, Branford, Connecticut 06405.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this matter pursuant to RSA 491:7.

6. Venue is proper in this Court pursuant to RSA 507:9 because the Plaintiff is located in Hillsborough County, New Hampshire.

7. This Court has personal jurisdiction over the Defendants pursuant to RSA 510:4 because Defendants and their agents transacted business and committed tortious acts within the State of New Hampshire.

## FACTS COMMON TO ALL COUNTS

### A.  The Business of Reality Interactive

8. Reality is a company that designs, builds, and scales in-store and event experiences for global brands, retailers and agencies. This includes programming and procuring digital signage, e-commerce solutions, augmented reality, and other services.

### B.  Negotiation and Execution of the Agreement

9. In 2019, Reality sought a seasoned sales executive to serve as its Sales Director. Mr. DeBonville was contacted in New Hampshire by a recruiter for this position. Upon information and belief, the recruiter was working with the knowledge of and on behalf of Reality.

10. On or about August 16, 2019, Mr. DeBonville was offered the position of Sales Director by Bryson Hyte, Partner and Co-Founder of Reality. Mr. Hyte and Reality

knew that Mr. DeBonville was a New Hampshire resident and would perform his duties primarily from his home in New Hampshire.

11. On or about August 17, 2019, Mr. DeBonville responded to Mr. Hyte with some questions regarding the terms under which he would terminate his existing employment and accept Reality's offer. Mr. Hyte and Mr. DeBonville discussed these terms the same day.

12. In that discussion, Mr. DeBonville inquired about the proposed base salary and terms on which he would earn commissions. As Mr. DeBonville shared with Mr. Hyte, these terms were important to Mr. DeBonville because he would be taking a substantially lower base salary in exchange for the opportunity to earn higher commissions on sales.

13. In response, Mr. Hyte told Mr. DeBonville what to expect based on the terms of the proposed agreement. He explained that a lower base salary was warranted because Reality was offering him base commissions of 12.5% of "margin as sold" on new-logo sales that Mr. DeBonville solely prospected and closed. Mr. Hyte represented that margins were not pre-determined, capped, or arbitrarily set by Reality. Instead, Mr. Hyte told Mr. DeBonville that Reality calculated margins by units sold, not product line, as sales revenue less the cost of goods sold. Mr. Hyte further represented that Mr. DeBonville would make more money in this new role than the role he was giving up.

14. On August 19, 2019, Mr. Hyte sent a revised offer letter to Mr. DeBonville to include a vehicle allotment and to clarify that certain commissions would not be compounded if certain revenue targets were met. Relying on Mr. Hyte's representations and the plain terms proposed, on the same day, Mr. DeBonville signed the August 19, 2019 Offer Letter (the "Agreement") and noticed the termination of his prior employment. Among other

things, the Agreement plainly states that Mr. DeBonville's base commissions "will be equal to 12.5% of 'margin as sold' on new-logo sales in which you demonstrate you solely prospected and closed."

### C. Mr. DeBonville's Performance

15. On or about September 3, 2019, Mr. DeBonville started in his new role at Reality. From September 2019 to March 2020, Mr. DeBonville primarily performed his role from New Hampshire. From March 2020 until his effective resignation in March 2022, Mr. DeBonville performed his role almost exclusively from his home in New Hampshire.

16. On or about the spring and summer of 2020, Mr. DeBonville solely prospected and closed a deal on Reality's behalf with Home Depot. The deal involved the sale of 6,000 Thermo Scanner units and 130 stands, with the units sent directly from the manufacturer in China to a Home Depot affiliate. To date, Reality has not disputed that Mr. DeBonville solely prospected and closed this deal.

17. Upon information and belief, there were no appreciable costs associated with the deal other than the manufacturer unit costs, which included shipping, and negligible costs associated with the verification of unit specifications.

18. All units were sent to Home Depot's affiliate by mid-October 2020. Reality was paid in full for the units by mid-October 2020.

19. The sale price of each Thermo Scanner unit was $1,695 and the manufacturer unit cost was $500 or less. The margin as sold for each Thermo Scanner unit was at least $1,195. The total margin as sold for the 6,000 Thermo Scanner units was approximately $7,170,000 or more. Per the Agreement, Mr. DeBonville was owed a base commission of 12.5% of this amount, approximately $896,250.

20. The sale price of each stand unit was $300 and the manufacturer unit cost was $30 or less. The margin as sold for each stand unit was at least $270. The total margin as sold for the 130 stand units was approximately $35,100. Per the Agreement, Mr. DeBonville was owed a base commission of 12.5% of this amount, approximately $4,387.50.

21. Instead of calculating the "margin as sold" on these Thermo Scanner units, Reality and Mr. Ligotti arbitrarily set the margin for the Thermo Scanner units at $50 per unit and the stand units at $7.50 per unit. This resulted in an underpayment of nearly $600,000.

### D. Dispute Over Margin Calculation

22. On or about July 7, 2020, Reality and Defendant Ligotti informed Mr. DeBonville that Reality set an arbitrary 20% margin for the sale of the Thermo Scanner and stand units. Mr. DeBonville responded to Defendant Ligotti that the arbitrary 20% margin did not comport with the "margin as sold" language in the Agreement.

23. Mr. DeBonville continued to dispute Reality's arbitrary use of a 20% margin thereafter. In November 2020, he raised the issue with Reality's finance and human resources department, noting that the commission reports sent to him did not reflect the total commissions owed.

24. In December 2020, he raised the issue again directly with Defendant Ligotti. Defendant Ligotti sidestepped the issue and instead discussed "additional compensation" for "high performing individuals" like Mr. DeBonville.

25. Over the course of 2021 and early 2022, Mr. DeBonville continued to seek information related to Reality's and Defendant Ligotti's decision to use an arbitrary margin of 20% to calculate his commission instead of the "margin as sold" as required by the Agreement.

26. Reality and Defendant Ligotti refused to provide any specific information on any costs associated with the sale of the units and instead claimed that it was a prior "longstanding practice" to use 20% as a set margin. This is directly contrary to Mr. Hyte's representations in August 2019.

27. Despite repeated requests, Reality and Defendant Ligotti refused to substantiate any costs associated with the sale of the Thermo Scanner and stand units.

28. Reality and Defendant Ligotti's refusal to provide any credible basis for withholding the commissions owed to Mr. DeBonville caused Mr. DeBonville to resign his position effective March 4, 2022 and institute this action.

## COUNT I

### (Breach of Contract Against Reality)

29. The allegations contained above are hereby repeated and incorporated by reference.

30. Reality and Mr. DeBonville entered into a binding contract, express or implied, on or about August 19, 2019. Mr. DeBonville satisfied all conditions of the Agreement.

31. Payment of a base commission of 12.5% of "margin as sold" is a material covenant of the Agreement.

32. Reality has breached the Agreement by refusing to pay Mr. DeBonville pursuant to the terms of the Agreement.

33. Despite repeated requests from Mr. DeBonville, the Defendants have not given any credible explanation for their failure to perform.

34. As a direct and proximate result of the Reality's breach of contract, Mr. DeBonville has suffered damages, entitling him to rightful compensation, plus costs, interest and attorneys' fees, and such other relief that he is entitled to receive, all in an amount to be proven at trial and within the jurisdictional limits of this Court.

## COUNT II

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Reality)**

35. The allegations contained above are hereby repeated and incorporated by reference.

36. All New Hampshire contracts include an implied covenant of good faith and fair dealing, requiring parties to act fairly with one another and in good faith during contract formation and performance. Birch Broadcasting v. Capitol Broadcasting Corp., 161 N.H. 192, 198 (2010)

37. The parties were obligated to perform their obligations under the Agreement in accordance with the parties' reasonable and justifiable expectations, cooperate with the other's performance, and not evade their obligations.

38. After solely prospecting and closing a significant deal that resulted in millions in sales revenue for Reality, Mr. DeBonville justifiably expected that the Defendants would abide by the reasonable terms of the Agreement. Instead, Defendants set an arbitrary margin of 20% that bears no reasonable relation to the actual margin of the units that Mr. DeBonville sold.

39. Reality thus breached the Agreement's implied covenant of good faith and fair dealing.

40. As a direct and proximate result of Reality's breach, Mr. DeBonville has suffered damages, entitling him to rightful compensation, plus costs, interest, and attorneys' fees, plus such other relief that Mr. DeBonville is entitled to receive, all in an amount to be proven at trial and within the jurisdictional limits of this Court.

## COUNT III

### (Fraud Against Reality)

41. The allegations contained above are hereby repeated and incorporated by reference.

42. Mr. Hyte was acting within the scope of his employment and on Reality's behalf when representing how Reality would calculate and pay commissions to Mr. DeBonville.

43. These representations were false and misleading when made.

44. These representations were made with knowledge of their falsity or with conscious indifference to their truth.

45. Reality intended Mr. DeBonville to act and rely upon these representations.

46. Mr. DeBonville reasonably and justifiably relied on these representations. A reasonable person would attach important to the existence or nonexistence of the terms under which he would receive compensation in determining his choice of action. Reality knew or should have had reason to know that Mr. DeBonville regarded or was likely to regard the matter as important in determining his choice of action.

47. As a direct and proximate result of Reality's fraud, Mr. DeBonville has suffered damages, entitling him to rightful compensation, plus costs, interest, and attorneys'

fees, plus such other relief that Mr. DeBonville is entitled to receive, all in an amount to be proven at trial and within the jurisdictional limits of this Court.

## COUNT IV

### (Improper Withholding of Wages Against Defendants)

48. The allegations contained above are hereby repeated and incorporated by reference.

49. Reality was an "employer" within the meaning of N.H. Rev. Stat. Ann. § 275.

50. Mr. DeBonville was an "employee" within the meaning of N.H. Rev. Stat. Ann. § 275.

51. Mr. Ligotti, as the chief executive with authority to make compensation decisions on Reality's behalf, was a corporate officer acting on Reality's behalf

52. at all times as alleged in the Complaint.

53. Defendants willfully and without good cause failed to pay Mr. DeBonville the commissions owed pursuant to the Agreement.

54. Defendants withheld these voluntarily and with knowledge that the wages were owed.

55. Reality had a financial ability to pay the wages given the substantial sales revenues generated by Mr. DeBonville.

56. Mr. DeBonville has suffered lost compensation that is due and owing, entitling him to damages, including without limitation liquidated and augmented damages, plus costs, interest, and attorneys' fees, and such other relief that Mr. DeBonville is entitled to receive, all in an amount to be proven at trial and within the jurisdictional limits of this Court.

## COUNT V

### (Promissory Estoppel against Reality)

57. The allegations contained above are hereby repeated and incorporated by reference.

58. Reality agreed to pay Mr. DeBonville commissions at a rate of 12.5% of "margin as sold." Reality also promised that margins would be determined fairly and not subject to any arbitrary maximum or cap.

59. Reasonably relying on such promises, Mr. DeBonville provided services to Reality.

60. Mr. DeBonville relied on such promises to his detriment as he provided and continued to provide services for which he was not paid.

61. Mr. DeBonville has been damaged as a result of Reality's failure to keep its promises.

62. Reality is now estopped from denying that such promises were made and is obligated to pay Mr. DeBonville his lost commissions, benefits, and other damages suffered.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A. Enter Judgment in favor of Plaintiff;

B. Award Plaintiff damages, liquidated and augmented damages, interest, costs, and attorneys' fees; and

C. Grant Plaintiff such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**MITCH DEBONVILLE**

By his attorneys,

SHEEHAN, PHINNEY, BASS & GREEN,
Professional Association

Dated:  June 30, 2022	By:	/s/ Jonathan R. Voegele
		David W. McGrath, Bar No. 9347
		Jonathan R. Voegele, Bar No. 270529
		75 Portsmouth Boulevard, Suite 110
		Portsmouth, NH 03801
		(603) 627-8223
		dmcgrath@sheehan.com; 603-627-8255
		jvoegele@sheehan.com; 603-627-8326